**UNITED STATES ex rel. NG LIN SUEY v. DAY, Commissioner of Immigration.**

District Court, S. D. New York.

April 27, 1931.

M. Michael Edelstein, of New York City, for relator.

George Z. Medalie, of New York City (Ernest Lappano, of New York City, of counsel), for respondent.

WOOLSEY, District Judge.

This writ is dismissed.

I. In 1922, when relator, Ng Lin Suey, was admitted, his evidence tallied with that of his citizen father, Ng Mun Fong.

On the present application, the evidence of relator tallied with that of applicant, but did not tally with his own evidence and that of his father in 1922, nor did it tally with his father's report on his return here in 1927, after a three years' absence in China, that he had two children, both sons, born in China whilst he was there.

The alleged father died in Bellevue Hospital on August 5, 1929, so there is not evidence from him on this application.

II. A careful reading of the evidence relied on by the Board of Review in arriving at the decision to exclude Ng Quock Leung, relator's alleged brother, satisfies me that the applicant has had a fair hearing. That being so, there is little more to be said, for the question is ultimately that of credibility. Cf. U. S. A. ex rel. Wong Sai Chaam v. Day (D. C.) 41 F.(2d) 526, 528.

The point on which I put most emphasis in refusing to disturb the finding of the Department herein is the fact that, although when the alleged father, Ng Mun Fong, last returned from China, landing at Seattle on April 25, 1927, he reported, as the fruit of his three years' stay in China, two sons, Wah See, then aged 3 years, and Chee Han, then aged 1 year, the present applicant and the relator both state that they do not know of any such children.

The applicant says that he had two younger brothers, one Ng Len Goy, now aged 6, born November 30, 1925, and another, Ng Len Toon, born December 9, 1927, after his alleged father's return to the United States in April, 1927.

III. This evidence leaves the alleged citizen father in the position of having made a false report on his return in April, 1927—a curious circumstance which is due doubtless to a desire to lay the foundation for future admissions of other sons, and which throws justifiable doubt on this whole situation.

Obviously there is a lack of candor somewhere here. Consequently I would not be justified in disturbing the findings of the Department.

I think it quite probable that the relator and the applicant are brothers but that neither of them is the son of Ng Mun Fong. Whilst such suspicion, of course, cannot affect relator's status as a duly admitted citizen, it justifies my not interfering with the applicant's exclusion.

IV. In cases of this kind mistakes and variances in names seem to be common and are sometimes given undue prominence. It must be remembered that these exotic proper names have to filter through at least two refractive media—the minds of the interpreter and of the stenographer—and so have two chances of being distorted. I think, therefore, that mere variances in names of relatives, etc., should not be overemphasized, especially if they are substantially idem sonans; but in this connection I venture the suggestion that Chinese witnesses be required in all examinations to write the proper names

to which they refer in Chinese characters as a check on the difficulties of accurate transcription above noted.