UNITED STATES, Appellee

v.

ELLIS LEROY BENSON, Seaman, U. S. Navy, Appellant

3 USCMA 351, 12 CMR 107

No. 2482

Decided September 11, 1953

CDR Edwin G. Moorhead, USNR, for Appellant.

CDR Richard J. Selman, USN, and CDR Robert F. Milota, USN, for Appellee.

### Opinion of the Court

GEORGE W. LATIMER, Judge:

On October 31, 1952, the accused was tried by a special court-martial on board the U. S. S. NORRIS for absence without leave in violation of Article 86, violation of a ship's order under Article 92, and breaking restriction in violation of Article 134, Uniform Code of Military Justice, 50 USC §§ 680, 686, and 728. He entered a plea of guilty and the finding was consistent with the plea. The court-martial considered three prior convictions and sentenced him to a bad-conduct discharge, reduction to an inferior rating, and restriction to the limits of the

ship for two months. On December 22, the convening authority suspended the bad-conduct discharge for six months, at which time it was to be remitted unless sooner vacated. The case was then forwarded to the supervisory authority and his legal officer called attention to the sentence, which included both a bad-conduct discharge suspended and restriction. He advised that the combination of those two punishments in the same sentence was illegal under the provisions of paragraph 127c, Manual for Courts-Martial, United States, 1951, and recommended that only so much of the sentence as provided for a bad-conduct discharge and reduction to the rating of seaman apprentice be approved. The supervisory authority followed this recommendation in his action of January 16, 1953.

The board of review in the office of The Judge Advocate General of the Navy held that the original sentence was illegal; that corrective action was necessary; and that the action of the supervisory authority on the findings and sentence was not incorrect in law. It concluded, however, that because the period of restriction had been served by the accused at the time it was remitted by the supervisory authority and because he had satisfied that part of his punishment, the portion of the sentence which should have been set aside was that part adjudging a bad-conduct discharge. To correct what it concluded was an injustice, the board of review set aside the bad-conduct discharge and approved only so much of the sentence as provided for reduction to the next inferior rating.

The Judge Advocate General of the Navy has certified the following issue to this Court:

"Where the period of restriction imposed is less than the period of confinement at hard labor which could have been imposed under the Table of Maximum Punishments, may a court-martial adjudge, in combination, restriction to certain specified limits and a punitive discharge?"

For our purposes it is unnecessary that we make an exact computation of the maximum punishment which the court could have imposed for the three offenses of which the accused was convicted. He was tried by a special court-martial, which is specifically prohibited from adjudging confinement in excess of six months and from imposing any punitive discharge other than a bad-conduct discharge. Article 19, Uniform Code of Military Justice, 50 USC § 579, provides:

". . . Special courts-martial may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this code except death, dishonorable discharge, dismissal, confinement in excess of six months, hard labor without confinement in excess of three months, forfeiture of pay exceeding two-thirds pay per month, or forfeiture of pay for a period exceeding six months. A bad-conduct discharge shall not be adjudged unless a complete record of the proceedings and testimony before the court has been made."

Suffice it to say that the total of the punishments prescribed in the Table of Maximum Punishments for the three offenses to which accused pleaded guilty, authorizes confinement at hard labor for at least six months and a bad-conduct discharge, and a sentence of that severity could have been adjudged. Accordingly, there can be no question that the sentence with which we deal is well within the limits permitted by the Manual for Courts-Martial, supra.

Appellate defense counsel can only sustain the board of review's holding: namely that although the individual portions of the sentence are well within the limits, the sentence was rendered illegal by the combination of a period of restriction with the bad-conduct discharge, if paragraph 127c of the Manual for Courts-Martial, United States, 1951, is controlling. It provides:

"The table [of Maximum Punishments, paragraph 127c, Section A], which lists the maximum punishments in terms of confinement or forfeiture, or both, contains no reference to lesser forms of punishment,

such as hard labor without confinement, restriction to limits, or detention of pay, which are appropriate for many minor offenses. *Unless dishonorable or bad conduct discharge is adjudged, the court in its discretion may substitute at the following rates other punishments for those listed in the table . . . ."* [Emphasis supplied].

We are at a loss to understand what prompted the legal officer on the staff of the supervisory authority to conclude the legality of the sentence was dependent upon that table. Apparently his conclusion was influential on others as when the cause was determined by the board of review, its decision adopted his theory. The principle is erroneous for the reason that the Code and the Manual authorize the sentence imposed without reference to any substituted punishment.

The Manual provides that imposition of the maximum punishment will normally be reserved for "an offense which is aggravated by the circumstances, or after conviction of which there is received by the court evidence of previous convictions of similar or greater gravity" (paragraph 76a, Manual for Courts-Martial, United States, 1951). That provision presupposes that there will be instances when the maximum sentence will be inappropriate; and that, in such a case, the court-martial may impose a lesser punishment even though it is known not to be equivalent to the greater. Here we have a situation where the sentence imposed was lesser and its imposition was not contrary to paragraph 127 of the Manual as the authority to impose restraint springs from other provisions of the Code and the Manual.

A reference to Article 19 of the Code, *supra,* will disclose that a special court-martial may impose any punishment not forbidden by the Code, with certain exceptions. Restriction is not included as an exception, and neither is confinement of six months or less. Confinement and restriction are both forms of restraint with the latter being the least severe. This is well recognized in the Code as a summary

court can restrict for a period of sixty days and it can confine at hard labor for only thirty days. If this formula were used it would seem that, if a court was authorized to confine for six months, it should be able to restrict for at least a similar period. We then pose the question, why is a special court precluded from imposing restrictions? Obviously, it is not, except as to the length of time they may be imposed.

Article 20 of the Code, 50 USC § 580, authorizes a summary court-martial to impose restriction for a period of not more than two months and under Article 15, 50 USC § 571, a commander authorized to administer non-judicial punishment may order an accused into restriction for two weeks. Those provisions indicate a clear Congressional acknowledgment that restrictions are a standard form of military punishment. However, the Manual for Courts-Martial, United States, 1951, introduced a limitation not found in the Code and applied the summary court-martial sixty-day period to all other courts-martial. Paragraph 126g, in discussing "restrictions to limits," states there is no limitation either as to the court which may adjudge this punishment or as to the persons subject to the Code upon whom it may be imposed but it will not be adjudged in excess of two months. This is the only limitation we find anywhere and if we accept the plain meaning of these words, restriction for sixty days can be imposed by a special court-martial not because it is necessary to compute it as an equivalent punishment but because its direct imposition is not contrary to law. They are not excepted punishments for special courts-martial, and specific authority to adjudge them is granted by the Manual.

The record does not disclose what prompted the court-martial in this instance to impose restrictions instead of the usual confinement. However, if we were required to speculate, we would conclude the court-martial did not perform an absurd and useless act and that it did not intend to violate the law. It would be necessary for us to arrive at a contrary conclusion

**353**

if we were to affirm the holding of the board of review. Absurdity would appear in the record if we were to hold the court reasoned through the mental processes required in using the tables, and indirectly arrived at a result when it could have more easily accomplished the same result directly. If the table was used, then members of the court-martial would first be required to determine that. one month's confinement at hard labor was sufficient restraint for the three offenses of which the accused was convicted. They would then be required to conclude it was necessary to increase the length of such restraint and correspondingly decrease the other. To go through this procedure seems absurd because of the following factors: The use of the table is forbidden when a bad-conduct discharge is imposed; the Manual states plainly that sixty days' restriction may be imposed; and the accused was aboard ship where confinement and restriction are more nearly equal in severity. Moreover, absurd results would flow from a holding that, if restrictions are imposed, they are the product of a table of computations. To hold that the Table of Equivalent Punishments must be resorted to in every case where a reduction in the severity of the restraint is desired would establish a principle that when a punitive discharge is adjudged, only confinement could be combined therewith, since that is the only type listed in the Table of Maximum Punishments. In many instances, hardships to the service and the accused would result from such a rule, particularly when the punitive discharge is suspended.

That to support the finding we would have to assume the court-martial either overlooked the law or intended to violate it, is supported by the following reasons: The wording of the Manual immediately above the table states plainly that unless a dishonorable or bad-conduct discharge is imposed, the table may be used. That is saying that if a punitive discharge is adjudged, it cannot be used. A bad-conduct discharge was considered by this court-martial as appropriate and was imposed. This prohibited using

equivalent punishments and the court-martial could hardly have escaped detecting the prohibition which was written immediately above the table it had to use. From the foregoing, it is apparent that not only does the Manual authorize the imposition of a restriction but, further, in certain instances, common sense recommends it. Accordingly, we find the sentence as imposed legal, and the question certified by The Judge Advocate General is answered in the affirmative.

There is one subsidiary matter which warrants discussion. The board of review, in setting aside the bad-conduct discharge, stated as follows:

". . . . Although the supervisory authority may have been of the opinion that the offense of which the accused was found guilty merited a more severe punishment than restriction and reduction to the next inferior rating, this much of the sentence had been executed and served; it could not be restored to the accused. To deprive him of 'credit' for it in order to permit an otherwise illegal bad conduct discharge to stand, in effect increased the severity of the sentence as approved by the convening authority. As a matter of *fact*, as distinguished from a matter of *law*, the accused has been sentenced to a period of restriction which he has already served, a reduction in rate, and a bad-conduct discharge. This sentence was, and remains, incorrect in fact."

Although that statement by the board of review seeks to characterize the ruling as a finding of fact which under Article 67(*d*), Uniform Code of Military Justice, 50 USC § 654, we would not review, the reasoning upon which it is based shows it to be a matter of law. That a portion of the sentence has, in fact, been served, does not prevent us from determining whether the sentence is illegal, in whole or in part. The manner in which a ruling is labelled is not determinative of its character. Here it is one of law and subject to review by us.

The case is returned to The Judge Advocate General of the Navy for reference to a board of review for reconsideration of the sentence in the light of the opinion expressed herein.

Chief Judge QUINN and Judge BROSMAN concur.